**Paul E. DAVIS and Evelyn L. Davis, Plaintiffs,**

**v.**

**UNITED STATES of America.**

**Civ. A. No. 66–1078.**

United States District Court
W. D. Pennsylvania.

Dec. 28, 1967.

J. Robert Maxwell, Pittsburgh, Pa., for plaintiff.

David A. Wilson, Jr., Richard J. Sideman, Dept. of Justice, Washington, D. C., Gustave Diamond, U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

This matter is here before me on a motion for summary judgment presented by the defendant, the United States of America, under Rule 56 of the Federal Rules of Civil Procedure. The plaintiffs, husband and wife, brought suit for the recovery of Federal income taxes and interest in the amount of $11,005.77, with statutory interest, which had been assessed and collected from the plaintiffs in the taxable year 1961. The plaintiffs do not dispute the accuracy of the facts which relate the chronology of events in the instant case, but do question "some of the factual conclusions" presented by the United States, defendant, and contend that these factual issues are material, genuine and substantial and preclude the granting of a motion for summary judgment at this time.

Franklin E. Davis, father of the plaintiff-husband (hereinafter referred to as the plaintiff), died on September 28, 1956. His estate was administered by the Union National Bank of Pittsburgh, and an estate tax return was filed on December 19, 1957 which showed a gross estate of $304,249.75, and an estate tax liability of $15,870.76. The District Director of Internal Revenue determined, however, that the gross estate should have been $634,918.90 and that the estate tax liability should have been $70,279.40. Consequently the estate was assessed a deficiency, plus interest, of $47,135.68. The executor paid the assessed taxes, and filed a claim for refund which was rejected, and on March 24, 1960, it brought suit in the United States District Court for the Western District of Pennsylvania to recover the assessment and statutory interest. The litigation reflected a disagreement over the value of the shares of North Side Laundry Company (Laundry Company) stock owned by the decedent. The parties eventually reached an agreement, whereby the Department of Justice, on August 24, 1961, accepted a compromise offer of the executor to value the stock at $591.15 per share. The executor was refunded $51,254.11, and the suit was dismissed by stipulation on October 27, 1961. On September 28, 1956, the date that Franklin E. Davis died, there were 600 outstanding shares of Laundry Company capital stock. Under the will of Franklin E. Davis his shares (193) were bequeathed to the plaintiff. These shares were distributed to the plaintiff on February 14, 1958, whereupon he became the owner of 325 shares, or 54% of the outstanding stock, while the other shareholders owned together 46% of the outstanding stock.

The last will of Franklin E. Davis did not specifically provide for the payment of estate taxes, and the 193 shares would

pass *in toto* to the plaintiff only if he paid the estate taxes arising from the valuation of those shares of stock. Consequently, in order to pay the asserted federal estate tax deficiency of $47,135.68, the plaintiff borrowed $57,000 from the Laundry Company on September 10, 1959. The loan had been approved on August 10,, 1959 by the Board of Directors of the Laundry Company on condition that the plaintiff issue a judgment note for this amount and provided for interest payments at a rate of 4½%. The lien of the judgment note continued until October 26, 1961 when the full amount of the loan was repaid. Interest payments at 4½% were made quarterly during the period when due. The plaintiff satisfied a portion of his debt to the Laundry Company by returning $33,000 out of the refund which had been made by the Government as a consequence of settling its litigation with the estate. The plaintiff satisfied all but a small amount of the balance of his debt by a redemption of 40 shares of his stock in the Laundry Company at a price of $591.15 per share. The redemption totaled $23,646.00. The minutes of a meeting by the Board of Directors of the Laundry Company on September 12, 1961, stated:

> "A motion was made by Mr. Bielau, seconded by Mr. Sell, and unanimously adopted, that the Company redeem forty (40) shares of Mr. Davis's stock, which he has offered to sell to the Company at the Federal Estate tax valuation of $591.15 per share, said stock to be held by the Company as treasury stock; his redemption for the purpose of repaying Paul E. Davis for death taxes paid on the Estate of Franklin Davis."

The shares were redeemed on October 12, 1961. The remaining balance due on the debt as well as all interest payments were paid by the plaintiff out of personal funds.

After the plaintiff's forty shares of Laundry Company stock were redeemed, he continued to own 285 shares of Company stock and the other shareholders continued to own 275 shares. The company held forty shares as treasury stock. Thus, of the shares owned by individual shareholders, the plaintiff owned 51% and the other shareholders owned 49%.

Upon audit of the plaintiffs' 1961 Federal income tax return, the District Director of Internal Revenue determined that they had failed to recognize income in the amount of $23,428.39, and he asserted a deficiency against the plaintiffs of $9,428.39, plus interest thereon of $1,577.38. The plaintiffs paid the deficiency of $11,005.77 on February 11, 1965, and subsequently filed a claim for refund on March 15, 1965. This claim for refund was disallowed in full on January 28, 1966. On September 7, 1966, the plaintiffs brought the present action against the defendant to recover Federal income taxes and interest thereon of $11,005.77, together with statutory interest. The defendant has answered the plaintiffs' complaint and submitted interrogatories to the plaintiffs. These interrogatories have been answered, and based upon the allegations contained in the plaintiffs' complaint and answers to the defendant's interrogatories, the defendant has moved for summary judgment.

The parties disagree over the characterization of the $23,646 received by the plaintiffs on the redemption of 40 shares of stock. The Internal Revenue Service determined that the redemption was a dividend (§ 316(a) of the Internal Revenue Code) and assessed them for additional taxes. The plaintiffs claim that the redemption must be treated as a sale or exchange of property. They rely upon two sections of the Internal Revenue Code of 1954, § 302 and § 303.

Section 303 of the Internal Revenue Code, dealing with distribution in redemption of stock to pay death taxes provides as follows: (26 U.S.C.)

> "(a) In general.—A distribution of property to a shareholder by a corporation in redemption of part or all of the stock of such corporation which (for Federal es-

tate tax purposes) is included in determining the gross estate of a decedent, to the extent that the amount of such distribution does not exceed the sum of—

(1) the estate, inheritance, legacy, and succession taxes (including any interest collected as a part of such taxes) imposed because of such decedant's death, and

(2) the amount of funeral and administration expenses allowable as deductions to the estate under section 2053 (or under section 2106 in the case of the estate or a decedent nonresident, not a citizen of the United States), shall be treated as a distribution in full payment in exchange for the stock so redeemed.

(b) Limitations on application of subsection (a).—

(1) Period for distribution—Subsection (a) shall apply only to amounts distributed after the death of the decedent and—

(A) within the period of limitations provided in section 6501(a) for the assessment of the Federal estate tax (determined without the application of any provision other than section 6501(a)), or within 90 days after the expiration of such period, or

(B) if a petition for redetermination of a deficiency in such estate tax has been filed with the Tax Court within the time prescribed in section 6213, at any time before the expiration of 60 days after the decision of the Tax Court becomes final.

(2) Relationship of stock to decedent's estate.—

(A) In general.—Subsection (a) shall apply to a distribution by a corporation only if the value

(for Federal estate tax purposes) of all of the stock of such corporation which is included in determining the value of the decedent's gross estate is either—

(i) more than 35 percent of the value of the gross estate of such decedent, or

(ii) more than 50 percent of the taxable estate of such decedent."

■ Redemption of shares as claimed by the plaintiff does not qualify under § 303 because it occurred on October 12, 1961, beyond the three-year statute of limitations imposed by § 6501(a) of the Internal Revenue Code, which expired on December 28, 1960, and because it occurred beyond the additional 90 days provided by § 303 (b) (1) (A) which fell on March 28, 1961.

■ Furthermore, the estate of Franklin E. Davis never petitioned the Tax Court to resolve its dispute with the Government over the value of the Laundry Company stock, and therefore the amount involved does not qualify under the provisions for redemption of shares under § 303(b) (1) (B), as contended by the plaintiff.

We consider, then, whether it qualified under § 302. Section 302 of the Internal Revenue Code deals with the distribution in redemption of stock. In pertinent part it provides: (26 U.S.C.)

"(a) General rule.—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

(b) Redemptions treated as exchanges.—

(1) Redemptions not equivalent to dividends.—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

\*   \*   \*   \*   \*   \*

(d) Redemptions treated as distributions of property.—Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies."

■ In general, a distribution of property by a corporation to the extent of its earnings and profits is treated as a dividend and is includible in the shareholder's gross income. Sections 316(a) and 301(a) and (c). An exception to this rule is found in Section 302(a) and (b), dealing with distributions in redemptions of stock. Under Section 302 (b) (1) a redemption is not includible in gross income as a dividend if the redemption is "not essentially equivalent to a dividend." Thus, if the redemption qualifies under this exception, the distribution is treated as payment in exchange for stock under Section 302(a), and since stock is generally a capital asset, any gain realized would be taxed as a capital gain. On the other hand if the redemption does not qualify under this exception of Section 302(b), then Section 302(d) provides that the redemption shall be treated as a distribution of property to which Section 301 applies and be taxed at ordinary income rates.

■ The clause limiting the applicability of Section 302(b) (1) to redemptions "not essentially equivalent to a dividend" was inserted by Congress to prevent taxpayers from avoiding the higher rate of taxation (or any taxation) by consummating transactions which are in form redemptions and in actuality disguised dividends. Therefore, the critical issue is whether or not the redemption was "essentially equivalent to a dividend" under Section 302(b) (1).

In Kerr v. Commissioner of Internal Revenue, 326 F.2d 225, 230, C.A. 9, 1964, the Court of Appeals stated:

"The words 'not essentially equivalent to a dividend' are words of art. They are not further defined by Congress. However, in enacting § 302(b) (1), Congress intended that the test for determining whether a redemption was 'essentially equivalent to a dividend' should be the same as the test utilized in interpreting and applying the same words in § 115(g) (1) of the 1939 Code. S.Rep.No.1622, 83d Cong., 2d Sess., p. 234 (3 U.S.C.Cong. & Admin. News (1954) 4621, 4870)."

In Cleveland v. Commissioner of Internal Revenue, 335 F.2d 473, C.A. 3, 1964, our Court of Appeals discussed the standards of "essentially equivalent to a dividend" in the context of reviewing a Tax Court decision which applied Section 115(g) of the 1939 Code. Judge Smith stated, at page 477:

"This court and others have uniformly held that whether a corporate distribution was essentially equivalent to a taxable dividend within the meaning of §§ 115(a) and (g) of the Code, supra, or a liquidating distribution within the meaning of §§ 115(c) and (i), supra, is a question of fact to be determined by the Tax Court. Ferro v. Commissioner of Internal Revenue, 242 F.2d 838, 840 (3rd Cir.1957); Boyle v. Commissioner of Internal Revenue, 187 F.2d 557, 560 (3rd Cir. 1959), cert. den. 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618; Smith v. United States, 121 F.2d 692, 695 (3rd Cir. 1941); Earle v. Woodlaw, 245 F.2d 119, 128, 129 (9th Cir.1957), cert. den. 354 U.S. 942, 77 S.Ct. 1400, 1 L. Ed.2d 1537; Commissioner of Internal Revenue v. Roberts, 203 F.2d 304, 306 (4th Cir.1953). The recognized criterion which must be applied in the determination of the issue is the net effect of the distribution rather than the motives of either those who initiated it or the officers of the corporation. Ibid."

"Application of the criterion requires a consideration of many factors, in-

cluding the following: (1) whether earned surplus and undivided profits were available for dividends; (2) prior dividend history of the corporation; (3) whether the distribution resulted in any substantial change of ownership or the proportionate interests of the shareholders; (4) whether the distribution was initiated by the corporation or its shareholders; (5) whether there was any substantial contraction in corporate business; and (6) the effect of the distribution on corporate finances as compared with the payment of regular dividends. Ferro v. Commissioner of Internal Revenue, supra; United States v. Fewell, 255 F.2d 496, 500 (5th Cir. 1958)."

■ The Government contends that application of the criterion, with a consideration of the factors listed, point by point, to the circumstances of the present case, calls for a conclusion as a matter of law that the "net effect" of the distribution rendered it essentially a dividend. However, in enumerating the various factors, the Government found that some of the factors supported its position more than other factors. For example, the prior dividend history of the corporation must be considered in determining the nature of the distribution. In the instant case the Laundry Company had a consistent record of prior dividend distribution to its shareholders which supports the position of the plaintiff that this was not "essentially equivalent to a dividend". The Government counters with the contention that this is a relatively unimportant consideration.

If, as stated in the Cleveland v. Commissioner of Internal Revenue decision, supra, the question of the nature of the distribution is a question of fact, then it is for the fact-finder to determine the relative weight to be given the various factors and the Government cannot usurp, nor can I, the function of the fact-finder in making the determination.

■ In the Federal courts summary judgment may be granted if, and only if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c).

The Supreme Court recently had the opportunity to review the standard for the granting of summary judgment. In United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), the government charged the defendant with illegally acquiring the assets of another corporation in violation of § 7 of the Clayton Act. Summary judgment was entered in favor of the defendant on the ground that the acquired corporation fell within the "failing company doctrine." The Supreme Court reversed stating in a per curiam opinion that:

"On summary judgment the inferences to be drawn from the underlying facts * * * must be viewed in the light most favorable to the party opposing the motion."

The same rule has been stated in the Third Circuit. Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 190 F.2d 817, C.A. 3, 1951; Toebelman v. Missouri-Kansas Pipe Line Co., 130 F.2d 1016, C.A. 3, 1942. In the *Toebelman* case, supra, Judge Maris stated at page 1018:

"Upon a motion for summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried."

■ For all of the reasons stated, the defendant's motion for summary judgment will be denied, in part only as it requires the determination to be made on the question of fact of whether the transaction was not essentially a dividend within the provisions of § 302(b)(1) of the Internal Revenue Code.