Donald E. BAKER and Barbara M.
Baker, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 02439.

United States District Court,
D. Nebraska.

Feb. 24, 1970.

Robert R. Veach, of Fraser, Stryker, Marshall & Veach, Omaha, Neb., for plaintiffs.

Richard A. Dier, U. S. Atty. for Dist. of Nebraska, for defendant.

MEMORANDUM AND ORDER

ROBINSON, Chief Judge.

This matter is before the Court on motion of plaintiff to amend the Court's Memorandum and Order of January 30, 1970 [filing #8] so as to properly re-

flect the Stipulation of Facts agreed to by the parties. The Court concludes the said motion should be granted. However, in lieu of an amendment the Court now vacates the Memorandum and Order of January 30, 1970 [filing #7] and substitutes this Memorandum and Order in lieu thereof.

The Stipulation of Facts jointly filed by the parties [filing #5] is incorporated herein by reference and the facts set forth in said Stipulation are adopted as the Court's Findings of Fact.

This matter became ripe for decision in accordance with the Court's Order of October 11, 1968. Briefs and reply briefs have been submitted.

The facts of the case are uncomplicated and not in dispute. Plaintiffs, Donald E. Baker and Barbara M. Baker, are husband and wife. At all times relevant they were stockholders of Peter Kiewit Sons, Inc. [PKS]. In January and May 1961 they received distribution from PKS in the total amount of $4,025.-00. Except for the statutory $100.00 dividend exclusion the distributions were reported as ordinary income on the taxpayers 1961 joint income tax return and the tax due was paid.

Later the corporation notified the plaintiffs that in its opinion a portion of the fiscal 1961 distributions were from sources other than earnings and profit. Plaintiffs then timely filed a claim for refund on the basis that the aforesaid distributions from the corporation were not taxable to them as they were not from the earnings and profits of the corporation.[1]

During the period here pertinent PKS distributed $1,880,179.75 cash to its shareholders which distribution included the $4,025.00 received by plaintiffs on their no par common stock. During the same fiscal year the corporation redeemed part of its issued and outstanding no par common stock from certain shareholders—not including plaintiffs—at a cost of $1,651,561.70. The parties agree that of this amount $157,002.57 was properly chargeable to capital. The remaining $1,494,559.13 was charged by the corporation to its earnings and profit account.

As of the beginning of its fiscal year ending June 30, 1961 the corporation had no accumulated earnings and profit. During the said fiscal year the corporation had earnings of $1,553,636.34.

The ultimate question presented is: When the earnings and profit of a corporation's fiscal year are insufficient to cover ordinary distributions and redemption distributions paid by the corporation during the fiscal year and both are charged against earnings and profit, which distributions take priority as to the earnings and profit available for distribution? If the redemption distributions are first charged against the earnings and profit account all but $59,-077.21 of the ordinary distributions are properly chargeable against capital and thus are a non-taxable distribution to taxpayers.[2] However, if the ordinary distributions are first charged against the earnings and profit account all but a comparatively small percent of these distributions constitute dividends and are ordinary income to the plaintiffs.

The defendant's position that the ordinary distributions take priority over the redemption distributions is based upon their interpretation of Section 316 I.R.

---

1. Plaintiff's claim for refund and the complaint here under consideration were filed on the basis that 2% of the distributions were from earnings and profits. Plaintiff has informed the Court that subsequent adjustments by the Internal Revenue Service to the corporation's earnings and profits, which adjustments plaintiffs do not contest, increase said percentage to 3.142%. Plaintiffs now concede that $126.47 of their distributions were from

earnings and profits, which amount exceeds the $100.00 dividend exclusion by $26.47.

2. The parties agree that plaintiffs' basis in the 3,500 shares of Kiewit no par common stock owned by them and here involved was in excess of the distributions received by them during the year involved. [Stipulation]

C. of 1954. Subsection [a] [2] defines dividends as follows:

"Sec. 316 DIVIDEND DEFINED.

[a] General rule—For purposes of this subtitle, the term 'dividend' means any distribution of property made by a corporation to its shareholders * * *

[2] out of its earnings and profits of the taxable year [computed as of the close of the taxable year without diminution by reason of *any* distributions made during the taxable year], without regard to the amount of the earnings and profits at the time the distribution was made. Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provisions of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection." [emphasis added].

It is plaintiffs' contention that the term "distributions" used in the parenthetical clause immediately above means distributions other than in redemption of stock.

 After consideration of the statutory language of Sections 301 to 318, I.R.C. of 1954 and the Regulations pertinent thereto, of the legislative history of § 316 [a] [2], and of the various contentions advanced by the plaintiffs and defendant it is the Court's finding that the ordinary distributions here in question [dividends] take priority over redemption distributions as to current earnings and profit.

Plaintiffs have advanced several seemingly persuasive arguments in support of their position to which the Court will now turn. Plaintiffs contend that:

A corporation with no accumulated earnings at the beginning of its fiscal year and which makes distributions to its shareholders during such fiscal year, cannot determine whether such distributions are from earnings or from capital until the end of its fiscal year when it can determine whether it had any earnings and profit. Redemption distributions do not constitute ordinary income to the recipients and therefore can be charged against earnings and profit without awaiting a profit determination. This contention obviously ignores the language contained in the parenthetical clause of § 316 [a] [2] which clearly and unambiguously provides that the entire amount of current earnings and profits is available for dividends "without diminution by reason of any distribution made during the taxable year."

However to establish this position plaintiffs assert that the term "distributions" used in the parenthetical clause in question means distributions other than in redemption of stock.

Plaintiffs contend that a reading of 316 [a] [2] in its entirety demonstrates that distributions as used throughout the dividend definition means distributions other than in redemption of stock. Plaintiffs assert that since Congress was defining dividend it was not appropriate to refer to the earnings and profit " * * * without diminution by reason of any dividends paid during the year." Instead the word distributions was used. Plaintiff also draws the Court's attention to the last sentence of Section 316 [a] which reads:

"To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection."

It follows, plaintiffs contend, as distributions in redemption of stock are not Section 301 distributions [they are governed by § 302] this redemption distribution is not the type of distribution intended by Congress in its use of the term "distributions" in Section 316 [a]. Plaintiffs also assert that if their view

is not accepted this results: a redemption distribution, except to the extent chargeable to capital, is a distribution out of earnings and profits and therefore falls within the definition of a dividend.

Plaintiffs are apparently asserting that, to avoid the above consequence, that "distributions" used in the parenthetical clause in Subsection 316 [a] [2] has reference only to dividend distributions to which Section 301 applies. However Regulation 1.316–1 of the income tax regulations provides that dividend comprises "any distributions of property * * * *in the ordinary course of business* * * *." [Emphasis is own]. This requirement has obviously been added by the Regulations chiefly to eliminate distribution for which the law provides different rules such as distributions in complete or partial liquidation, in certain redemptions, or in corporation reorganizations. There is no question that redemption distributions are not made in the ordinary course of business. Thus it is apparent that Congress foresaw the situation where the language of Section 316 [a] [2] would result in a non-dividend type distribution technically falling within the definition of a dividend. The Regulations have provided for this possibility by limiting the definition of dividends to distributions "in the ordinary course of business."

Plaintiffs contend that this language [in the ordinary course of business] modifies distributions whenever used in § 316 [a] and hence, since a redemption is not in the ordinary course of business, distribution as used in the parenthetical clause, does not include distributions in redemption of stock. The Court does not interpret the section as such.

In Davis v. United States, 277 F.Supp. 602 [W.D.Pa.1967] the court said:

"In general, a distribution of property by a corporation to the extent of its earnings and profits is treated as a dividend and is includible in the shareholder's gross income. Section 316 [a] and 301 [a] and [c]. An exception to this rule is found in Section 302 [a] and [b], dealing with distributions in redemption of stock. Under Section 302 [b] [1] a redemption is not includible in gross income as a dividend if the redemption is 'not essentially equivalent to a dividend.' "

Redemption distributions are thus an exception to the normal tax consequences of a Section 316 distribution. The exception applies only if the redemption is not "essentially equivalent to a dividend." In certain circumstances it cannot be determined if a redemption is not essentially equivalent to a dividend until months after the redemption distribution.[3] Accordingly, it follows the redemption exception is from the tax consequences and label which follows from Section 316 rather than for purposes of determining priority. If plaintiffs' position was accepted, and redemption distribution took priority to the earnings and profit of a corporation, a shareholder would be subject to a tax deficiency letter for years if a redemption was later determined to be the equivalent of a dividend.

Plaintiffs also contend that the statutory pattern of Sections 301, 302, 312 and 316 support their position. The argument runs as follows: A dividend is defined under Section 316 as "any distribution of property made by a corporation * * * out of its earnings and profits." Section 301 [c] [1] purports to tax every distribution out of earnings and profit which qualifies as a dividend [as defined in 316] as ordinary income "except as otherwise provided." Redemption distributions are otherwise provided for [Section 302], and therefore the definition of a dividend in Section 316 [a] must not include redemption distributions and there-

---

3. e. g., The corporation "redeems" a proportionate share of each shareholder's stock, but does so over a three year period. Thus the pattern which in effect labels the distributions dividends does not become apparent until long after the initial distribution.

fore should read " * * * any distribution of property, other than in redemption of stock, made by a corporation to its shareholders * * * out of its earnings and profit." It follows, plaintiffs contend, that the same definition of distribution must be read throughout Section 316 and thus the parenthetical reference to "distributions" in Section 316 [a] [2] likewise means distributions other than in redemption of stock. This argument follows the pattern of plaintiffs' previous contention by again searching the language of certain statutory sections to justify their strained interpretation of Section 316 [a] [2]. This argument is redundant in that plaintiffs have previously asserted that a redemption is technically not a dividend and as heretofore mentioned the language of Regulation 1–316 [a] indicates the same. If the Regulation language is read as simply exempting certain transactions from the effect, but not the priority determinations, of Section 316 there is no conflict with the statutory pattern of the various code provisions. The effect of Section 316 is that a redemption is a dividend. The effect of Regulation 1–316 is to exempt a redemption distribution from the tax consequences of the definition. The reason a redemption distribution does not fall within the definition of a dividend provided for in Section 316 is not because distribution has a qualified meaning which is suggested by an exhaustive and strained interreading of Sections 301–317, but because Regulation 1–316 exempts this type of distribution from the statutory provision.

Plaintiffs also assert that the legislative history of Section 316 [a] [2] discloses that Congress intended the word "distributions" to mean distributions other than redemption distribution. The argument advanced is as follows:

[1] In 1936 Congress enacted the undistributed profits tax which taxed that portion of a corporation's net income which was not offset by the credit allowed for "dividends paid." [i. e., its undistributed net income].

[2] A deficit corporation could not distribute dividends for by definition it would have no accumulated earnings and profits out of which dividends could be distributed. Thus if a deficit corporation distributed all of its yearly earnings and profit it still would be subject to the undistributed profits tax for it would not have the required prerequisite for the distribution of a dividend—accumulated earnings and profit.

[3] To provide relief for the deficit corporations, Congress expanded the definition of dividends to include distributions of earnings and profit out of the current taxable year.

[4] The credit for redemption distributions as set forth in Section 27 [f] was limited to the part of such distributions which is properly chargeable to the earnings and profit accumulated after February 28, 1913.

[5] Thus "the statutory use of the word distributions in the amendatory language of Section 115 [a] Internal Revenue Act of 1936, now Section 316 [a], Internal Revenue Code of 1954, to achieve such result for a deficit corporation, was obviously intended to mean distributions other than redemption distribution" [Plaintiffs' brief—p. 35].

However, after a careful analysis plaintiffs' conclusion is not so obvious to the Court. As the government pointed out, if as plaintiffs contend, redemption distributions diminish current earnings before dividends can be computed under the 1954 code, this would also have been true under the 1936 Act and the relief Congress intended to grant deficit corporations by expanding the definition of dividends would have been unavailable any time a deficit corporation made redemption distributions equal to current earnings and profit. If, however, current earnings were applied to dividends without diminution by redemption or liquidation distributions then the full relief intended by Congress would be available.

Congress had another purpose in expanding the definition of dividends in the Revenue Act of 1936. This was to simplify the determination of which distributions constitute taxable dividends to shareholders and dividends paid credit to the corporation.

Thus if plaintiffs' position is supported the computation of whatever dividends paid credit a corporation was entitled to would have been complicated by the necessity of first determining what part of the redemption distributions was properly chargeable to capital.

As an alternative argument plaintiffs contend that if, arguendo, their basic position is not the proper interpretation of Section 316 [a] then Regulation 1–316–2 requires an equal apportionment of the year's earnings and profit among dividends and redemption. Regulation 1–316–2 reads in pertinent part as follows:

"[b]. * * * If the distributions made during the taxable year consist only of money and exceed the earnings and profits of such year, then that proportion of each distribution which the total of the earnings and profits of the year bears to the total distributions made during the year shall be regarded as out of the earnings and profits of that year. * * * "

The Court does not interpret this regulation as calling for an apportionment of earnings and profit between redemption and dividends. Regulation 1–316–1 provides that ordinary distributions are dividends to the extent of current earnings and profit undiminished by "any distribution." Regulation 1–316–2 follows up Section 1–316–1 of the Regulations by providing rules for determining the treatment of earnings and profit in the light of an admitted ordinary distribution. Thus Regulation 1–316–2 [b] is a proportion of current earnings and profit among these admitted ordinary distributions only.

In interpreting the code sections pertinent to this matter the Court has considered not only the Congressional language used in the Sections, but also the Congressional purpose behind their enactment. No doubt there will be developed in the future, as there has been in the past, tax schemes neatly fitting the Congressional language but not its intent. In such a case the Court must consider both factors.

This matter, however, did not present such a problem, for to sustain plaintiffs' position the Court would have had to ignore the obvious language of Section 316 [a] [2] as well as what the Court believes to be the Congressional intent behind the enactment.

Defendant asserts that if Congress had intended "distributions" in Section 316 [a] [2] to include redemption distributions it "could easily have said so." Plaintiffs' response to this argument was, in part, that if Congress once started qualifying such terms in definition, the process would continue "*ad infinitum.*" However, considering the far reaching tax consequences resulting from plaintiffs' interpretation it would have been a simple matter for the Commissioner to clarify the interpretation in the Regulations. Obviously, Congress did not intend the term to include "redemption distributions." In accordance with the Stipulated Facts the Court finds that 17.368% of the $4,025.00 received by plaintiffs from PKS in 1961 constituted a return of capital and that said amount, to-wit: $699.06, did not constitute taxable income to plaintiffs. Accordingly,

It is ordered that judgment be entered for the plaintiffs in conformity with the foregoing Findings of Fact and Conclusions of Law. Counsel for plaintiffs shall submit a proposed judgment within fifteen [15] days from the date of this Order.